**M. Maureen SHANNON,
et al., Plaintiffs,**

v.

**PLEASANT VALLEY COMMUNITY
LIVING ARRANGEMENTS,
INC., Defendant.**

**Civil Action No. 98–121J.**

United States District Court,
W.D. Pennsylvania.

Jan. 27, 2000.

Paul Puskar, Hollidaysburg, PA, for Plaintiffs.

Roberta Binder Heath, Michael J. Wagner, Andrews & Wagner, Altoona, PA, for Defendant.

### MEMORANDUM OPINION
### and ORDER

D. BROOKS SMITH, District Judge.

In this case, plaintiffs have mounted a challenge to their employer's overtime

practices under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* Specifically, plaintiffs—who work as Residential Program Workers ("RPWs") in defendant's group homes for the mentally retarded—claim that they should have been paid overtime for the hours they were required to sleep on defendant's premises.[1] Defendant has filed a motion for summary judgment, dkt. no. 32. For the following reasons, I will deny the motion.

## I.

The evidence adduced through discovery shows that plaintiff-RPWs work eighty-three hours every two-week pay period, dkt. no. 33, exh. F at 84, as follows: A shift begins on Wednesday at 3:00 P.M. and concludes the following Wednesday at 10:00 A.M.[2] *Id.* Employees are required to sleep on company premises from 11:00 P.M. to 7:00 A.M. so that they are available to attend to their clients' special needs during the night. They are also considered "on call" between the hours of 9:00 A.M. and 3:00 P.M., although they are free to leave the premises or otherwise attend to personal business during that time and are not subject to discipline if they are unavailable. At the conclusion of the one-week shift, employees are off for the following week. *Id.* at 88.

Defendant does not compensate its employees for on-call time, a policy not in dispute in this litigation, nor is sleep time-the point of contention here-normally compensated. The exception, asserts defendant, is that employees are fully compensated for any hours during which their sleep is interrupted during the night by client needs, *id.* at 138; moreover, if the interruption cumulatively exceeds three hours (meaning less than five hours sleep), employees are compensated as if they had worked the entire eight hours, *id.* at 141; dkt. no. 33, exh. G at 74–75. Plaintiffs dispute this, claiming that defendant did not pay at all for interruptions shorter than three hours and told employees not to submit overnight hours, dkt. no. 33, exh. H at 23–27, 90–91, 94–95; exh. I at 34–37; as further support, they rely in part on defendant's identical answers to interrogatories 1 and 13, which support the conclusion that nighttime interruptions would not be paid unless the employee got less that five hours total sleep. *See* dkt. no. 35, exh. 9 ¶ 13; exh. 16 ¶ 1. This was corroborated by the testimony of Roland Domoski, dkt. no. 33, exh. M at 26–27.

Defendant's Executive Director, Arlene Balch, testified that she explained the policy on sleep time to prospective new hires during the interview process, dkt. no. 33, exh. F at 96–97, 100; *accord* dkt. no. 33, exh. J at 16; exh M at 30, 32; exh. N at 12; exh. T at 15, 21; this was also corroborated by Program Specialist Cathy Moyer, dkt. no. 33, exh. G at 11–12, although plaintiff Reese testified that she was only informed of the policy on or after her first day of work, at orientation. Dkt. no. 33, exh. J at 56–57. Balch also "corrected" her response to Interrogatory 1 to reflect that any sleep period overtime would be compensated, not just interruptions over three hours.[3]

---

1. Plaintiffs also have filed a claim under Pennsylvania's Wage Payment and Collection Law ("WPCL"), 43 Pa.C.S. 260.1 *et seq.* They admit, however that the WPCL only provides a remedy to recover wages earned but not paid and that the FLSA determines in the first instance whether wages for sleep time were earned. Thus, they concede that their WPCL claim rises or falls on the outcome of their FLSA claim.

2. The payroll period, however, runs from Sunday through Saturday, meaning that a work shift will span two pay periods. *Id.* at 92.

3. Plaintiffs note, correctly, that the answer to Interrogatory 1 is consistent with the answer to Interrogatory 13, and that Balch purported only to correct her answer to number 1, thereby leaving number 13 uncontroverted. I attach no significance to this overly technical distinction. The fact is simply that she corrected what she believed to be an earlier misstatement, and plaintiff will not be permitted to make a damning admission out of Interrogatory 13 merely because the witness failed to remember that she gave the same answer in two places on the same document. Plaintiffs have not filed a motion for summary judgment, nor could they possibly hope to prevail on one. The trier of fact will have to

In addition, Balch explained that new employees, including plaintiffs, were required to (and did) sign an acknowledgment form reciting that they received copies of these policies and that sleep time was not compensable unless they were actually required to work.[4] Dkt. no. 33, exh. F at 72–73, 96–97; exh. H at 55–57; exh. I at 16; exh. J at 27–29; exh. V (signed acknowledgments); see also Exh. AA (actual manuals). Shannon, in fact, acknowledged that her complaint was not with the written policy, but that defendant was breaching it by not paying overtime for sleep interruptions. Dkt. no. 33, exh. H at 100–03. Finally, company policy was reviewed every year during in-service training, Dkt. no. 33, exh. F at 96–97; exh. G at 15–16; exh. M at 32; exh. P at 33; exh. W (attendance records), although plaintiff Maureen Shannon denies this, dkt. no. 33, exh. H at 16–17.[5] As part of an employee satisfaction survey, plaintiffs Maureen Shannon and Kim Yingling expressed "strong agreement" and "agreement," respectively, to a question asking whether personnel policies and procedures were made available and explained in a clear manner. Dkt. no. 33, exh. Z.

The majority of witnesses who were deposed testified that they were paid for all instances of documented overtime during the sleep interval, and were never instructed not to turn in such time. See, e.g., dkt. no. 33, exh. K at 17; exh. L at 36; exh. M at 31; exh. N at 22, 33–34; exh. O at 17–19; exh. P at 25–28, 30–32; exh. R at 16–17; exh. T at 17–21. Plaintiffs as well submitted numerous instances of overtime, which were duly paid. Indeed, all three plaintiffs testified that their sleep was interrupted every night and throughout the night. Dkt. no. 33, exh. H at 92; exh. I at 85; exh. J at 45. Nevertheless, Shannon submitted sleep period overtime only rarely because, according to her testimony, she was told by Arlene Balch that such overtime was not in the budget and she should not seek it. Dkt. no. 33, exh. H at 27–28, 99. The same contention is made for plaintiffs Yingling and Reese. Dkt. no. 33, exh. I at 36 (Yingling, no money in budget.); exh. J at 58–60 (Reese, similar). On one occasion, Reese submitted 2.5 hours because she was "fed up with being constantly interrupted in the middle of the night and not getting paid for it[,]" but was paid for only one hour. Dkt. no. 33, exh. J at 62–64.

## II.

Summary judgment is appropriate where admissible evidence fails to demonstrate a genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). If the nonmoving party bears the burden of persuasion at trial, the moving party must show that the nonmoving party's evidence is insufficient to carry that burden. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The nonmoving party can create a genuine issue of material fact by pointing to evidence in the record sufficient to support a verdict in its favor at trial. *Brewer v. Quaker State Oil Refining Corp.*, 72 F.3d 326, 330 (3d Cir.1995). Alternatively, "the burden on the moving party may be discharged by showing ... that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325, 106 S.Ct. 2548 (internal quotation marks omitted). "[S]ince a complete failure of proof concerning an essential ele-

determine whether the written or oral version reflected the policy of defendant.

4. The personnel manual plaintiffs were given, however, recites that it is "not an implied or express contract" and that its policies were "unilaterally adopted" by the employer.

5. Shannon's testimony throughout her deposition is, to put it mildly, tortured. The transcript contains numerous instances where the witness asked simple questions to be repeated, claimed she didn't understand simple questions, and gave convoluted answers when she finally did respond. The situation was made none the better by excessive and protracted bickering between opposing counsel over the wording of, and answers to, many of those questions.

ment," *id.* at 323–24, 106 S.Ct. 2548, on which a party bears the burden of proof at trial establishes that the moving party is "entitled to a judgment as a matter of law," the nonmoving party must establish the existence of every element essential to its case. *Id.* Such evidence must be significantly probative and more than "merely colorable." *Armbruster v. Unisys Corp.,* 32 F.3d 768, 777 (3d Cir.1994).

Once the moving party has satisfied its burden, the nonmoving party is required by Fed.R.Civ.P. 56(e) to establish that there remains a genuine issue of material fact. *Clark v. Clabaugh,* 20 F.3d 1290, 1294 (3d Cir.1994). The nonmovant "may not rest upon mere allegation or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is material if it "might affect the outcome of the suit under the governing law ..." *id.* at 248, 106 S.Ct. 2505, and is genuine "if the evidence is such that a reasonable [factfinder] could return a verdict for the nonmoving party." *Id.* at 248, 257, 106 S.Ct. 2505.

In determining whether a nonmovant has established the existence of a genuine issue of material fact requiring trial, the evidence of the nonmovant must "be believed and all justifiable inferences are to be drawn in [her] favor." *Id.* at 255, 106 S.Ct. 2505. Whether an inference is justifiable, however, depends on the evidence adduced. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 595–96, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). An inference based upon speculation or conjecture does not create a material factual dispute sufficient to defeat summary judg-

ment. *Robertson v. Allied Signal, Inc.,* 914 F.2d 360, 382 n. 12 (3d Cir.1990). Likewise, "simply show[ing] that there is some metaphysical doubt as to the material facts" does not establish a genuine issue for trial. *Matsushita,* 475 U.S. at 586, 106 S.Ct. 1348.

### III.

■ The Wage and Hour Division of the Department of Labor has set forth certain interpretive rules applicable to the issue of sleep time compensation. *See* 29 C.F.R. §§ 785.21, 785.22, 785.23. These rules, which merely state the agency's position on what the underlying statute means in particular contexts, do not have the force of law and it is not precisely settled whether the interpretations embodied therein are entitled to substantial deference under *Chevron* [6] or some lesser quantum of consideration. *Compare Ingram v. County of Bucks,* 144 F.3d 265, 268 (3d Cir.1998) (applying "substantial deference" and citing, *inter alia, Elizabeth Blackwell Health Ctr. v. Knoll,* 61 F.3d 170, 182 (3d Cir. 1995) (applying *Chevron* deference to agency interpretive rule)) *with Martin v. Cooper Elec. Supply Co.,* 940 F.2d 896, 900 (3d Cir.1991) (interpretation "constitute[s] the agency's 'body of experience and informed judgment' about the statute and ... should be given 'considerable and in some cases decisive weight' ") (citing *Skidmore v. Swift & Co.,* 323 U.S. 134, 140, 65 S.Ct. 161, 89 L.Ed. 124 (1944), no discussion of *Chevron* ). At a minimum, these interpretive rules are a substantial resource of agency expertise "to which courts and litigants may properly resort for guidance." *Skidmore,* 323 U.S. 134, 140, 65 S.Ct. 161 (1944) [7]; *accord Beaston v. Scotland School for Veterans' Children,* 693 F.Supp. 234, 237 (M.D.Pa.1988), *aff'd mem.,* 869 F.2d 587 (3d Cir.1989).[8] Here,

---

**6.** *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).

**7.** For a thorough discussion of the distinctions between and split of authority over "deference" due to legislative regulations under *Chevron* and the "consideration" due interpretive rules under *Skidmore* and its progeny, see also *Brooks v. Village of Ridgefield Pk.,* 185 F.3d 130, 141 (3d Cir.1999) (Rendell, J., dis-

senting) (discussing, *inter alia, Caruso v. Blockbuster–Sony Music Entertainment Ctr.,* 174 F.3d 166, 177 (3d Cir.1999); *Beaston,* 693 F.Supp. at 238 (refusing to defer to 29 C.F.R. § 785.21 as arbitrary and in violation of *Skidmore* )); *Blackwell,* 61 F.3d at 190–94 (Nygaard, J., dissenting).

**8.** Defendant refers to *Beaston* in several places in its brief as "binding precedent." This is incorrect. It is well-settled that a

however, no party seriously contends that the agency's interpretation does violence to the intent of Congress as expressed in the FLSA and I can discern no such unfaithfulness to the legislative mandate. Hence, I will apply these rules to the case at bar.

Section 785.21 provides that an employee who has less than a twenty-four hour tour of duty must be compensated for sleep time. In this case, § 785.21 is facially applicable because, even though employee's work time, sleep time and on-call time exceeds twenty-four hours, the freedom employees have to leave the employer's premises and engage in their own pursuits indicates their shifts are, in reality, for less than a twenty-four hour period. *See Hultgren v. County of Lancaster*, 913 F.2d 498, 505–06 (8th Cir.1990); *Nelson v. Alabama Inst. For Deaf & Blind*, 896 F.Supp. 1108, 1112 (N.D.Ala.1995).[9]

Section 785.22, in contrast, deals with the situation in which employees work shifts that are greater than twenty-four hours. Under those circumstances, sleep time is compensable, unless employer and employee mutually agree to exclude sleep periods of not more than eight hours, "adequate sleeping facilities are furnished by the employer and the employee can usually enjoy an uninterrupted night's sleep." *Id.* Any interruptions to the sleep interval must be compensated and, if an "employee cannot get at least 5 hours' sleep time during the scheduled period the entire time is working [compensable] time." *Id.* Defendant argues that this section is applicable to its employees, but, as discussed *supra*, the "on-call" time during which employees may attend to personal business on- or off-premises negates any assertion that they work shifts of twenty-four or more hours. *See* Department of Labor Wage and Hour Memorandum 88.48, at 5 (June 30, 1988)[10] (reproduced at dkt. no. 35, exh. 23) ("an off-duty period (free time)

district court opinion, even when published, has no precedential value when it is affirmed without a published opinion by the court of appeals. *See, e.g., Long v. Sears Roebuck & Co.,* 105 F.3d 1529, 1534 n. 7 (3d Cir.1997) (citing *Ransom v. Marrazzo,* 848 F.2d 398, 411 (3d Cir.1988)); *Kaplan v. First Options of Chicago, Inc.,* 19 F.3d 1503, 1511 n. 12 (3d Cir.1994) (citing *Galgay v. Gil–Pre Corp.,* 864 F.2d 1018, 1021 & n. 5 (3d Cir.1988)). *Beaston* is, however, persuasive authority entitled to such weight as the quality of its reasoning and analysis warrants, a point about which I will have more to say *infra* at note 11.

**9.** I note, however, that Judge Caldwell, in dicta, has criticized the applicability of § 785.21 as arbitrary and unfaithful to longstanding Supreme Court precedent on how sleep time should be evaluated under the FLSA. *Beaston,* 693 F.Supp. at 238 (discussing *Skidmore,* 323 U.S. at 136–37, 65 S.Ct. 161 and *Armour & Co. v. Wantock,* 323 U.S. 126, 133, 65 S.Ct. 165, 89 L.Ed. 118 (1944)); *see also Hultgren,* 913 F.2d at 505 n. 4 (noting the *Beaston* court's criticism of § 785.21); note 7, *supra.* Because of my conclusion, *infra,* that § 785.21 is not applicable on the facts of this case, I also need not reach this question.

**10.** In its brief, defendant refers to "U.S. Dep't of Labor PACH/MRP Report July 22, 1988." Dkt. no. 33, at 10. This document, which is reproduced at dkt. no. 35, exh. 26, is essentially a summary of Memorandum 88.48, prepared by the Pennsylvania Association of Community Mental Health/Mental Retardation Providers, and the assertion for which it is cited, that sleep time "exclusions must be the result of an employer-employee agreement, and not a unilateral decision of the employer[,]" dkt. no. 33, at 10, is an uncontroversial and accurate statement of the law. *See* Memorandum 88.48, at 4. Nevertheless, in another example of gratuitous bickering, plaintiff's counsel accuses defendant of relying on a "document [that] doesn't exist, [which] Defendant knows ... doesn't exist." Apparently, plaintiff's counsel is upset that defendant has appeared to attribute this document to the Department of Labor. This is nothing more than a quibble over an obviously unintentional mistake. The acronym contained within defendant's citation clearly suggests the nongovernmental origin of the document. Further, plaintiff's counsel accuses defendant of sowing confusion by conflating record evidence of on-call overtime policies with those of sleep period overtime. At no time have I been confused by this basic distinction. Creating such "tempests in teapots," aside from deviating from the better traditions of the bar, simply wastes valuable judicial time.

... 'breaks' an on-duty period for the purposes of [§ ] 785.22[ ]").

Section 785.23, however, provides potentially the closest fit with the group home situation presented here. Under that provision, employees who reside permanently or for extended periods of time on the employer's premises may enter into "any reasonable agreement" over sleep time, even if they have "periods of complete freedom from all duties" and are permitted, as here, to leave the employer's premises. *See Bouchard v. Regional Governing Bd.*, 939 F.2d 1323, 1330 (8th Cir.1991). If § 785.23 applies, it takes precedence over and supersedes § 785.21. *Braziel v. Tobosa Developmental Servs.*, 166 F.3d 1061, 1064 (10th Cir.1999).

In this case, while the employees do not reside permanently at defendant's group homes, there is no factual dispute that they do reside there for extended periods. As recited *supra*, defendant's employees spend seven days at a time on defendant's premises. This has been explicitly held sufficient to constitute an "extended period of time." *Beaston*, 693 F.Supp. at 239.[11] Indeed, that ruling is fully consistent with Wage and Hour Memorandum 88.48. There, in an enforcement policy statement specifically directed at group homes for the mentally retarded, the agency recites that it

will consider an employee who sleeps in private quarters in a homelike environment[ ] to reside on the premises for an extended period of time within the meaning of [§ ] 785.23 if the employer

resides on the premises for a period of at least 120 hours [five days] in a workweek.... An employee will be found to reside on the premises for extended periods of time if: (1) the employee is on duty at the group home and is compensated for at least eight hours in each of five consecutive 24–hour periods; and (2) the employee sleeps on the premises for all sleep periods between the beginning and end of this 120–hour period.

*Id.* at 3; *accord Bouchard*, 939 F.2d at 1329 (applying Memorandum 88.48 and 1981 letter ruling which adopted 120–hour test);[12] *Lott v. Rigby*, 746 F.Supp. 1084, 1089 (N.D.Ga.1990) (applying Memorandum 88.48).

■ Thus, I hold on these undisputed facts that § 785.23's "extended period" requirement is satisfied.[13] The next question is whether, as both the codified regulation and Memorandum 88.48 require, the exclusion of sleep time was "the result of an employee-employer agreement and not a unilateral decision of the employer." Memorandum 88.48, at 4. I conclude it was.

■ Plaintiff makes much of the passage in the personnel manual that no contract was created and that the terms of employment were "unilaterally adopted" by defendant. Although this was no doubt an unfortunate choice of verbiage on defendant's part, it would elevate form over substance to pretermit a more searching inquiry based solely on unartful drafting.

11. Plaintiffs' counsel assails the *Beaston* decision as "neither based on thorough research and analysis nor is not [sic] a well reasoned opinion." Dkt. no. 35, at 23. He then suggests that a well-respected jurist has "built a straw man, blamed the DOL for constructing it, and then tor[n] it down." *Id.* at 24. After carefully reading *Beaston*, I find no merit whatsoever in counsel's harsh critique and find Judge Caldwell's decision to be thoroughly grounded in both law and sound analysis.

12. The *Bouchard* court criticized conditions (1) and (2) of Memorandum 88.48 as "an unreasonable attempt to dictate the precise

nature of relationships that *Skidmore* and the regulation [§ 785.23] acknowledge will vary." 939 F.2d at 1329 n. 3. But there, as in *Beaston* and the case *sub judice*, the agency's interpretation was factually satisfied in any event, so the court's remarks are dicta.

13. I am also satisfied that Memorandum 88.48's "homelike environment" requirement is met as well. Even though plaintiffs Yingling and Reese sometimes slept on a couch, the record clearly shows that that was their personal choice, not a requirement imposed by defendant. Dkt. no. 33, exh. I at 82–83, 88–89; exh. J, at 71–73.

The interpretive regulations are silent on how to distinguish between a bargained-for agreement and a unilaterally imposed term of an employment relationship. The caselaw, however, sheds considerable light on the distinction. I begin by noting that, whatever the personnel manual recited, there had to be *some* contract of employment between plaintiffs and defendant, whether express or implied. The only question is what its terms were, and it is well-settled that implied agreements will satisfy the interpretive regulations at issue here. *See Ariens v. Olin Mathieson Chem. Corp.*, 382 F.2d 192, 197 (6th Cir. 1967); *accord Braziel*, 166 F.3d at 1063; *Trocheck v. Pellin Emer. Med. Serv., Inc.*, 61 F.Supp.2d 685, 693 (N.D.Ohio 1999); *Beaston*, 693 F.Supp. at 240.

Thus, in *Bouchard*, the Eighth Circuit rejected plaintiffs' argument that a sleep time provision in a written employment agreement was unilaterally forced on employees when: (1) it "codified the parties' prior employment relationship"; and (2) there was no evidence that any refused to sign the agreement. 939 F.2d at 1330–31. Likewise, in *Beaston*, a written agreement that restated past practice and was understood and accepted by plaintiffs was held to have been bargained for and not unilaterally imposed. 693 F.Supp. at 240. And in *Braziel*, the court held that plaintiffs who "understood and acquiesced to [an existing] policy when they were hired[ ]" were parties to an implied agreement, noting that there was no unilaterally imposed change in sleep time compensation after plaintiffs began their employment. 166 F.3d at 1063–64 (citing *Ariens*, 382 F.2d at 197; *Bouchard*, 939 F.2d at 1330–31).[14] The same facts are present here, as it is undisputed that defendant never changed its sleep time policies after plaintiffs were hired. Dkt. no. 33, exh. F at 137–38; exh. G at 17. Finally, in *Trocheck*, the court found an implied agreement where

the sleep time policy was explained, the employee cashed his paychecks, did not complain within a short time of beginning employment and did not refuse to work his whole shift. 61 F.Supp.2d at 693–94; *accord Baker v. Stone County*, 41 F.Supp.2d 965, 993 (W.D.Mo.1999) ("[T]he courts have overwhelmingly held that continuance of employment can be evidence of an implied agreement as to the terms of that employment." (collecting cases, citations and internal quotation marks omitted)).

Here, there can be no question but that plaintiffs entered into at least an implied agreement with defendant over sleep time. Defendant explained its policies on that subject either before plaintiffs were hired, or, at worst, very shortly thereafter. Plaintiffs signed off on the personnel manual which contained the policy, and two of the plaintiffs either agreed or strongly agreed that the policies had been clearly explained. Finally, there is no indication that any plaintiff lodged any formal protest or refused to accept a paycheck prior to the filing of this litigation. *See* dkt. no. 33, exh. G at 21–23; exh. H at 98 (Shannon merely "mentioned" the issue to management.),100 (Shannon acknowledged that no one made a written complaint.); exh. I at 41 (Yingling); exh. J at 59, 80–81 (Reese complained only orally to management).

That leaves the question whether the agreement on sleep time compensation was "reasonable." Section 785.23 provides that the parties may enter into "any reasonable agreement ... which takes into consideration all of the pertinent facts[,]" recognizing that it is "difficult to determine the exact hours worked" when an employee resides on his employer's premises for an extended period of time. Memorandum 88.48, however, goes further and attempts to more particularly define what is reason-

---

**14.** In so holding, the *Braziel* court distinguished *Hultgren*, 913 F.2d at 506, a case in which a state-run home suddenly came under FLSA jurisdiction as a result of a Supreme Court decision and management unilaterally presented a sleep time agreement to its employees on a take-it-or-leave-it basis, making the "agreement" invalid as a defense in plaintiffs' FLSA case.

able. According to the Memorandum, the following criteria must be met:

(1) the employer and the employee have reached agreement in advance that sleep time is being deducted;

(2) adequate sleeping facilities with private quarters ... were furnished;

(3) if interruptions occurred, employees in fact got at least five hours of sleep during the scheduled sleeping period;

(4) employees are in fact compensated for any interruptions in sleep; and

(5) no more than eight hours of sleep time is [sic] deducted for each full 24–hour on-duty period.

*Id.* at 4–5.

These requirements track those specifically enumerated in § 785.22, and it may well be questioned whether, in a letter ruling, the agency may legitimately incorporate detailed requirements of one interpretive rule into another which is silent on those issues. *Cf. Bouchard,* 939 F.2d at 1329 n. 3 (criticizing Memorandum 88.48's requirement that employees "be compensated 'for at least eight hours in each of five consecutive 24–hour periods[ ]' " as "an unreasonable attempt to dictate the precise nature of relationships that ... the regulation acknowledge[s] will vary[ ]"); note 12, *supra.* But, both the codified rule and the Memorandum simply reflect the agency's view of what the statute requires, and the latter is simply a refinement, based on accumulated agency expertise, of what is reasonable in the specific context of a group home. The Memorandum in no way contradicts either the statute or previ-

ous agency interpretation (at least, defendant has made no such argument), and it is undisputed that defendant was aware of its contents. I therefore decline to exclude its requirements from my analysis.

■ To the extent, of course,. that defendant's proffered sleep time policies are as they assert, they are in full compliance with both § 785.23 and the Memorandum and therefore reasonable as a matter of law. Plaintiff, however, has adduced evidence, albeit slender and subject to credibility attack, that the policies as implemented were not in compliance with the Memorandum. According to plaintiff, defendant paid overtime only if an employee received less than five hours sleep and told employees not to turn in any other overtime for sleep interruptions. If the factfinder credits this testimony, then the agreement in practice cannot be found reasonable under § 785.23.[15] Thus, I must deny the motion for summary judgment.[16]

An appropriate order follows.

### *ORDER*

AND NOW, this twenty-seventh day of January 2000, upon consideration of defendant's motion for summary judgment, dkt. no. 32, and the responses thereto, it is hereby

ORDERED and DIRECTED that:

1. the foregoing motion is DENIED;

2. plaintiffs shall file their pretrial statement by February 10, 2000;

---

**15.** That does *not* mean, however, that the entire agreement will be invalidated and plaintiffs will be entitled to full compensation for all sleep periods. Rather, they would be entitled simply to back overtime arising out of incidents of interrupted sleep lasting less than three hours, in effect enforcing the requirements of the Memorandum. Any overtime compensation beyond that would amount to a windfall.

**16.** Plaintiffs' counsel takes defendant to task for asserting a "good faith defense" under section 259 of the FLSA, 29 U.S.C. § 259, even though that defense was not pleaded.

Dkt. no. 35, at 16–17. First of all, defendant's opening brief is devoid of any § 259 argument, which defendant states in its reply brief it has never asserted. Dkt. no. 36, at 3. Second, plaintiffs' counsel totally ignores the liberal amendment standard under Fed. R.Civ.P. 15(b), which allows amendment of the pleadings "even after judgment[,]" by lamely arguing-without authority-that there is no provision for amendment at the summary judgment stage. Dkt. no. 35, at 16. This is another example of unnecessary and unproductive argument, and I have no need to consider it further.

3. defendant shall file its pretrial statement by February 24, 2000;

4. a pretrial conference shall be held at 319 Washington Street, Johnstown, Pa. on Wednesday, March 22, 2000, at 4:30 P.M.

5. the above-captioned case shall be listed for trial before the undersigned at the convenience of the court.