**STATE OF MAINE**                                    **SUPERIOR COURT**

Cumberland, ss.

STATE OF MAINE
Cumberland ss. Clerk's Office

JUN 26 2018
12:40pm
RECEIVED

**SYDNEY A. and PATRICIA A. TerMORSHUIZEN**

Plaintiffs

v.                                    **Docket No. PORSC-CV-17-0192**

**SPURWINK SERVICES, INC.**

Defendant

## ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

The Motion for Summary Judgment filed by Defendant Spurwink Services, Inc. ["Spurwink"] is before the court, together with the opposition of Plaintiffs Sydney A. and Patricia A. TerMorshuizen, and Spurwink's reply memorandum.

The Plaintiffs are spouses who were formerly employed by Spurwink as a live-in therapeutic couple whose duties required them to stay for 10 days and 11 nights at a time at one of the group homes operated by Spurwink for its clients. The legal issue presented in this case is whether the Plaintiffs are entitled to additional overtime pay during their overnight stays at the group home.

*Background*

Plaintiffs Sydney and Patricia TerMorshuizen are husband and wife, and were employed by Defendant Spurwink between September 2011 and December 2016. Defendant Spurwink is a licensed, nonprofit mental health agency that provides services for children, adolescents and adults with emotional or behavioral disturbances

1

and/or developmental disabilities. Plaintiffs worked as a live-in "therapeutic couple" at a group home serving up to three Spurwink clients at any given time. Most of the clients who resided at the group home while Plaintiffs worked there were between 11 and 16 years old, and required significant care and attention due to emotional, behavioral or development issues.

Plaintiffs' primary responsibility as a therapeutic couple was to reside with the clients in a home-like, safe and comfortable environment while supporting individual treatment plans for clients. Plaintiffs' work schedule generally began at 8 p.m. Monday of a given week and continued until 10 a.m. of the Friday of the following week, with 11 consecutive overnights at the residence. They had their own bedroom in the home and were required to remain on premises overnight. There were "baby monitors" in the clients' bedroom with a receiver in Plaintiffs' bedroom, so that Plaintiffs were able to hear sounds from the clients' bedrooms during sleep hours, and were thus able to respond to a client during the night if necessary.

The Plaintiffs' daily schedule included up to eight hours of unpaid "sleep time" between 10 p.m. and 6 a.m. each overnight and breaks of several hours each on each full day of their 10-day shift except for the Saturday-Sunday falling at the midpoint of each 10-day shift. All other time was paid at a specified hourly rate.

At all relevant times, Spurwink's practice regarding compensation for interrupted sleep time was to pay Plaintiffs for interruptions only if an interruption involved attending to a client. If the Plaintiffs' sleep was interrupted to the point that

2

Plaintiffs were able to get less than five hours of sleep that night, the Plaintiffs were paid for the entire eight hours of sleep time.

Spurwink's policy regarding unpaid sleep time is meant to track the federal Department of Labor standards for payment of sleep time codified at 29 C.F.R. § 785.23.

The Plaintiffs acknowledge that they have been compensated for all interruptions of their sleep that were eligible for compensation under Spurwink's policy. *See* Plaintiffs' Response to Defendant's Statement of Material Facts No. 29. However, Plaintiffs contend that there were many more sleep interruptions for which they were not compensated, because Spurwink would not permit them to record time associated with a sleep interruption unless it involved responding to a client.

They contend that they routinely suffered sleep deprivation for which they were not compensated when they were awakened during sleep time but were not required to respond to a client. They say that due to the baby monitors and due to the construction of the residence, they were regularly awakened or prevented from falling asleep by sounds and movement in the clients' bedrooms that did not require them to get out of bed and attend to a client.

Spurwink's response contends that nothing in state or federal law required Spurwink to compensate Plaintiffs for interruptions of their sleep if the Plaintiffs did not attend to a client during the period of the interruption, as long as the Plaintiffs could get at least five hours of sleep.

3

"The function of a summary judgment is to permit a court, prior to trial, to determine whether there exists a triable issue of fact or whether the question[s] before the court [are] solely . . . of law." *Bouchard v. American Orthodontics*, 661 A.2d 1143, 44 (Me. 1995).

Questions of fact must be viewed in a light most favorable to the non-moving party—Plaintiff in this case. Thus, for purposes of Spurwink's motion, the court takes as true and established the Plaintiff's assertions that they were often awakened from sleep by noises that did not require them to get out of bed and attend to a client, and also that they were not regularly able to get a good night's sleep due to frequent interruption of sleep by sounds made by clients.

However, "summary judgment is appropriate when the portions of the record referenced in the statements of material fact disclose no genuine issues of material fact and reveal that one party is entitled to judgment as a matter of law." *Currie v. Indus. Sec., Inc.*, 2007 ME 12, ¶ 11, 915 A.2d 400. "A material fact is one that can affect the outcome of the case, and a genuine issue exists when there is sufficient evidence for a fact finder to choose between competing versions of the fact." *Lougee Conservancy v. City-Mortgage, Inc.*, 2012 ME 103, ¶ 11, 48 A.3d 774 (quotation omitted).

*Analysis*

Plaintiffs' single-count complaint alleges that Defendant failed to pay them for all hours worked, and that Defendant's failure to pay violates the overtime pay

4

provision of Maine statute, 26 M.R.S. § 664(3), and entitles Plaintiff to actual, liquidated and punitive damages, attorney fees and costs, as well as interest.

*(1) The Maine Overtime Payment Law*

The parties agree that there is no Maine Law Court precedent that defines whether, and under what criteria, an employee who is required to spend the night at the employer's premises is entitled to be paid for sleep time or interruptions to sleep time. However, the United States District Court has recently addressed issues very similar to those raised in this case. *See Giguere v. Port Resources, Inc.,* ___ F. Supp. 2d ___, 2018 U.S. Dist. LEXIS 70913 (D. Me. 2018) (Torreson, J.).

The statute under which Plaintiffs have brought their claims for overtime pay entitles employees to be paid for "work," but does not define what constitutes "work." *See* 26 M.R.S. § 664(3) ("An employer may not require an employee to work more than 40 hours in any one week unless 1 1/2 times the regular hourly rate is paid for all hours actually worked in excess of 40 hours in that week.").

Plaintiffs assert that the Law Court's decisions on compensation for on-call or waiting time are directly applicable, and that those decisions call for a highly fact-specific determination focusing on whether the employee's time spent on-call or waiting is for the employer's benefit. *See Crook v. Russell,* 532 A.2d 1351 (Me. 1987) ("One of the most significant factors courts have used in analyzing the totality of circumstances in overtime pay cases is whether time spent on-call is primarily for the benefit of the employer or for the benefit of the employee."). *See also Cooper v. Springfield Terminal Railway,* 635 A.2d 952 (Me. 1993). Because the Plaintiffs'

5

entitlement to the overtime pay they seek is highly dependent on factual issues, Plaintiffs contend that Spurwink cannot be granted summary judgment.

Spurwink contends that there are no genuine issues of fact about the terms of Plaintiffs' entitlement to compensation for interrupted sleep time that did not entail getting up and attending to clients. Specifically, Spurwink contends that the Plaintiffs' entitlement is defined by the terms of their employment, under which they agreed that they would not be paid for interruptions of sleep that did not require them to get out of bed and attend to a client, as long as they could get at least five hours of sleep. Spurwink says the agreement is enforceable because it is based on the federal law regarding payment for sleep time, codified at 29 C.F.R. § 785.23.

In essence, Spurwink's argument is that, by accepting terms of employment provided compensation only for interruptions that required them to get up and attend to clients, the Plaintiffs must be deemed to have agreed that interruptions of sleep that did not require them to get up did not constitute "work" for purposes of the Maine overtime statute, 26 M.R.S. § 664(3).

Plainly, not every so-called agreement is enforceable—otherwise, no employee who accepted a position that did not pay overtime for work over 40 hours could ever pursue an overtime claim. Spurwink concedes that it cannot unilaterally impose an unreasonable policy regarding what is and is not compensated overtime, but argues that, because its policy is based on the federal "sleep time" regulations, its policy draws a reasonable and enforceable distinction between what counts as "work" for purposes of overtime under section 664(3) and what does not.

6

Plaintiffs respond by noting that Maine has not adopted sections 785.22 and 785.23 or any federal wage and hour standard for purposes of defining an employee's entitlement to overtime pay under 26 M.R.S. § 664(3). They also note that an employee's waiver of rights under Maine's wage statute is void as a matter of public policy. *See* 26 M.R.S. § 645.

On the issue of whether an employer's policy for paying overtime can be deemed to comply with section 664(3) if it complies with federal overtime standards, the court agrees with Spurwink. Because section 664(3) does not define what constitutes "work" for which overtime must be paid, an employer's overtime policy that defines compensable overtime "work" in a reasonable manner consistent with the requirements of federal overtime law and regulations could be deemed compliant with Maine's wage statutes, including section 664(3). *See Gordon v. Maine Cent. R.R.*, 657 A.2d 785, 786 (Me. 1995) ("When, as here, a term is not defined in either the relevant statutory provisions or in prior decisions of this court, Maine Courts may look to analogous federal statutes, regulations, and case law for guidance."). *Accord, Giguere v. Port Resources, Inc.*, ___ F. Supp. 2d ___, ___, 2018 U.S. Dist. LEXIS 70913 * 26 (D. Me. 2018).

*Spurwink's Policy and the Federal Basis For It*

Spurwink's stated policy on compensating therapeutic couples for sleep time appears in three different places in the record.

7

One place is in the agreement initialed by Plaintiffs at the time of their hire. That statement of policy reads: "There is no pay for sleep time up to (8 hrs./day) except when clients require direct care." *See* Affidavit of Plaintiffs, Ex. 1.

A second place is in a document titled Twenty-Four Hour Rule — Unpaid Sleep Time (DOL Section 785.22). That statement reads, in pertinent part:

> 3. If sleep time is interrupted by work duties (such as a client being awake), the time of interruption must be counted as time worked and thus paid for.

> Affidavit of Plaintiffs, Ex. 2.

A third statement appears on the biweekly schedule forms that Plaintiffs were provided each shift, which are called Employee Status Reports (ESR):

> In the event that one is called to duty during the unpaid sleep period, this will be considered paid sleep time (e.g. responding to a client during sleep time). If the periods of interruption are so frequent that one is unable to have five hours for sleep (not necessarily continuous hours), then one will be paid for all scheduled hours.

> Defendant's Statement of Material Facts ¶ 21 & Exhibit E.

The common theme in these statements of policy is that therapeutic couples would be paid only for interruptions of sleep that caused them to respond to a client, and would not be paid if they were awakened but did not get out of bed, unless the interruptions prevented Plaintiffs from getting at least a total of five hours of sleep.

Spurwink asserts that its policy is based on federal wage and hour law, specifically the Department of Labor regulations on sleep time. Those regulations appear in pertinent part at 29 C.F.R. §§ 785.22-23, which read as follows:

8

§ 785.22 Duty of 24 hours or more.

   (a)     General. Where an employee is required to be on duty for 24 hours or more, the employer and the employee may agree to exclude bona fide meal periods and a bona fide regularly scheduled sleeping period of not more than 8 hours from hours worked, provided adequate sleeping facilities are furnished by the employer and the employee can usually enjoy an uninterrupted night's sleep. If sleeping period is of more than 8 hours, only 8 hours will be credited. Where no expressed or implied agreement to the contrary is present, the 8 hours of sleeping time and lunch periods constitute hours worked.

   (b) Interruptions of sleep. If the sleeping period is interrupted by a call to duty, the interruption must be counted as hours worked. If the period is interrupted to such an extent that the employee cannot get a reasonable night's sleep, the entire period must be counted. For enforcement purposes, the Divisions have adopted the rule that if the employee cannot get at least 5 hours' sleep during the scheduled period the entire time is working time.

§ 785.23 Employees residing on employer's premises or working at home.

   An employee who resides on his employer's premises on a permanent basis or for extended periods of time is not considered as working all the time he is on the premises. Ordinarily, he may engage in normal private pursuits and thus have enough time for eating, sleeping, entertaining, and other periods of complete freedom from all duties when he may leave the premises for purposes of his own. It is, of course, difficult to determine the exact hours worked under these circumstances and any reasonable agreement of the parties which takes into consideration all of the pertinent facts will be accepted. This rule would apply, for example, to the pumper of a stripper well who resides on the premises of his employer and also to a telephone operator who has the switchboard in her own home.

   Spurwink contends that Plaintiffs' employment is governed by section 785.23 because the Plaintiffs resided on Spurwink's premises for extended periods of time.

Plaintiffs contend that section 785.22 applies, because they were required to be on duty

for more than 24 hours, i.e., to sleep at the Spurwink residence and to be available to attend to clients during the night.

If section 785.22 applies, as Plaintiffs contend, Spurwink clearly is not entitled to summary judgment because that section applies only when "the employee can usually enjoy an uninterrupted night's sleep," and the Plaintiffs have generated a genuine issue as to that material fact.[1] Moreover, Spurwink's sleep time policy does not comport with the section 785.22 requirement that employees be compensated for the entire sleep period if they cannot get five consecutive hours of sleep. Spurwink's policy requires compensation if the employee cannot get five hours of sleep, consecutive or not, and thus is inconsistent with section 785.22.

However, Spurwink contends that it is section 785.23 that applies here. Spurwink acknowledges that, for purposes of summary judgment, it bears the burden of proving that Plaintiffs' employment is within the scope of section 785.23. Spurwink asserts that it has met its burden by proving that its sleep time policy was a "reasonable agreement of the parties which takes into consideration all of the pertinent facts" for purposes of section 785.23. It asserts further that, because its policy is valid under federal wage and hour law, its policy should be deemed compliant with the state overtime statute. *See* 26 M.R.S. § 664(3).

---

[1] The United States Department of Labor has issued a bulletin defining the requirement that an employee be able "usually [to] enjoy an uninterrupted night's sleep" to mean that the employee must be able to get five consecutive hours of uninterrupted sleep at least half the time. *See* Dep't of Labor, Exclusion of Sleep Time from Hours Worked by Domestic Service Employees 7 (Apr. 25, 2016).

This court agrees with Spurwink's premise that, because the state statute requires only that an employee be compensated for overtime "work," without defining what is "work," an employer policy that complies with federal wage and hour standards is presumptively compliant with the state statute. Thus, the question comes down to whether Spurwink has established as a matter of law that its sleep time policy complies with the federal wage and hour law.

There are three elements to Spurwink's burden.

The first element of Spurwink's proof is to establish that there was an agreement between it and the Plaintiff regarding sleep time and interruptions in sleep. The undisputed facts establish that Plaintiffs agreed to Spurwink's sleep time policy when they were hired and accepted compensation pursuant to that policy. Courts have regularly decided that an employee's assent to an employer's sleep time policy and acceptance of compensation pursuant to that policy are sufficient to establish the existence of an implied agreement for purposes of section 785.23. *See Garofolo v. Donald B. Heslep Assocs., Inc.*, 405 F.3d 194, 200-01 (4th Cir. 2005); *Braziel v. Tobosa Development Services*, 166 F.3d 1061, 1063 (10th Cir. 1999); *Ariens v. Olin Mathieson Chemical Corp.*, 382 F.2d 192, 197 (6th Cir. 1967); *Shannon v. Pleasant Valley Community Living Arrangements, Inc.*, 82 F. Supp. 2d 426, 432 (W.D. Pa. 2000).

Plaintiffs argue that they cannot be held to have agreed to Spurwink's policy because an employee cannot waive entitlement to overtime compensation. However, "[t]he fact that overtime rights are nonwaivable 'does not foreclose, of course, reasonable provisions of contract or custom governing the computation of work hours

11

where precisely accurate computation is difficult or impossible.'" *Barrazo v. Pardo,* 2015 U.S. Dist. LEXIS 94006 at *12 (W.D. Fla.), *aff'd,* 2016 U.S. App. LEXIS 16232 (11th Cir.), *quoting Tenn. Coal, Iron & R.R. Co. v. Muscoda Local No. 123,* 321 U.S. 590, 603, 64 S. Ct. 698, 88 L. Ed. 949 (1944).

Based on the undisputed facts, Spurwink has met its burden to show an implied agreement that Spurwink's sleep time policy would govern Plaintiffs' entitlement to compensation.

The next element of Spurwink's proof is to show that the Plaintiffs resided on Spurwink's premises for extended periods of time within the meaning of section 785.23. The federal Department of Labor has construed the section 785.23 requirement that employees reside on the employer's premises for "extended periods of time" to mean that the employees "can be considered as residing on the employer's premises, provided that they spend five consecutive days or five consecutive nights on the premises." *See* U.S. Dep't of Labor, Wage & Hour Div., Op. Ltr. at 2 (Feb. 3, 1981). There is no doubt that the Plaintiffs' employment satisfied this requirement.

The last element of Spurwink's proof is to show that its policy reflects a reasonable agreement that takes into account all pertinent facts and circumstances. For Spurwink to obtain summary judgment on the issue whether its sleep time policy comports with section 785.23 and hence is enforceable under 26 M.R.S. § 664(3), Spurwink acknowledges that it must establish that its policy was reasonable as a matter of law.

12

"Reasonableness is a fact-intensive inquiry . . ." *John F. Murphy Homes, Inc. v. State*, 2017 ME 67, ¶ *38*, 158 A.3d 921 (Jabar, J., concurring in part and dissenting in part). *See American Sardine Co. v. Olsen*, 117 Me. 26, 30, 102 A. 797, 799 (1917) ("Reasonableness is a question of fact.").

On the other hand, as Spurwink points out, numerous federal courts have granted summary judgment to employers on employee claims for sleep time compensation, based on the courts' determination that the employer sleep time policies at issue were reasonable as a matter of law. *See, e.g., Garofolo v. Donald B. Heslep Assocs., Inc.*, 405 F.3d 194, 200-01 (4th Cir. 2005); *Hendricks v. Oklahoma Production Center Group Homes*, 159 Fed. Appx. 875, 877-78 (10th Cir. 2005); *Braziel*, 166 F.3d at 1063-64; *Bouchard v. Regional Governing Bd.*, 939 F.2d 1323, 1329-37 (8th Cir. 1991); *Beaston v. Scotland School for Veterans' Children*, 693 F. Supp. 234, 239-40 (M.D. Pa. 1988).

Several factors compel the conclusion that Spurwink's policy is objectively reasonable as a matter of law.

First, the policy calls for an employee to be compensated whenever the sleep interruption results in the employee doing work. "[A]n agreement under § 785.23 must take into account some approximation of the hours actually worked, or reasonably required to be worked, by the employee." *Leever v. City of Carson*, 360 F.3d 1014, 1021 (9th Cir. 2004).

Second, Spurwink's policy in effect leaves it to the employee to determine whether an interruption of sleep is compensable. Had Plaintiffs gotten up and seen to a client each time they were awakened, they would have been compensated for that time.

13

In effect, the implied agreement that is reflected in Spurwink's sleep time policy differentiates between interruptions that result in a call to duty and those that do not. That distinction is an objectively reasonable one, because it rests on the principle that an employer should be required to compensate an employee when the employee does something of benefit to the employer.

In contrast, under the policy Plaintiffs say Spurwink should have followed, they would be entitled to compensation whenever they were awakened, whether or not they got out of bed to check on a client and even if they were able to get more than five hours of sleep. Thus, under Plaintiffs' view of the overtime payment law, light sleepers would necessarily be paid more than heavy sleepers. People who could get by on less than eight hours of sleep would earn more than people who needed more sleep. People who fall asleep easily after being awakened would be paid less than people who have to count sheep to get back to sleep.

The compensation policy that Plaintiffs say the law requires depends more on an employee's personal sleep habits than on whether the employee actually is called to duty, and does not reflect a reasonable interpretation of the overtime wage payment law.

The compensation policy that Plaintiffs say the law requires is also unworkable as a practical matter. Would any noise that woke up one of the Plaintiffs result in compensation, or would noise from outside the house—traffic noise, for example—be excluded? What if the awakening was spontaneous and not caused by any noise? How would a jury calculate the time each Plaintiff spent awake and lying in bed?

The entire purpose of section 785.23 is to eliminate the need for such tortuous computations. In *Garofolo*, the Fourth Circuit rejected the "contention that the district court erred in holding that the employment agreement was reasonable without making any finding regarding the actual number of hours the Garofolos worked. Imposing such a requirement would defeat the purpose of section 785.23. The regulation contemplates situations in which it is difficult, if not impossible, to determine the exact amount of time worked." 405 F.3d at 201.

In light of the undisputed facts, there is nothing for a reasonable fact finder to decide in this case. No reasonable fact finder could say that it was unreasonable for Spurwink to pay for interruptions to sleep only when the employee is actually tending to a client, or when the interruptions cumulatively prevent the employee from getting at least five hours of sleep.

In that regard, the parties' implied agreement on what does—and what does not—constitute "work" for purposes of 26 M.R.S. § 664(3) is reasonable and enforceable. Plaintiffs were compensated when they actually got out of bed and tended to a client or when they could not get a decent night's sleep (at least five hours) and that is all the law requires.

*Conclusion*

For the reasons stated, it is hereby ORDERED AND ADJUDGED as follows:

1. The Defendant's Motion for Summary Judgment is granted.

15

2.    Judgment on the complaint is hereby entered for Defendant Spurwink Services, Inc. against Plaintiffs Sydney and Patricia TerMorshuizen.    Defendant is awarded its recoverable costs.

Pursuant to M.R. Civ. P. 79(a), the Clerk is directed to incorporate this Order by reference in the docket.

Dated June 26, 2018

A. M. Horton, Justice