2009 ME 132

**Douglas L. BOOTHBY**

**v.**

**Joseph W. GRINDLE et al.**

Supreme Judicial Court of Maine.

Argued: Sept. 17, 2009.
Decided: Dec. 29, 2009.

Stephen Y. Hodsdon, Esq. (orally), Hodsdon & Clifford, Kennebunk, ME, for Douglas L. Boothby.

Daniel A. Pileggi, Esq. (orally), Roy, Beardsley, Williams & Granger, LLC, Ellsworth, ME, for Joseph Grindle, Barbara Grindle, Brian K. Astbury, Lucy S. Astbury, Barbara Y. Black, Peter F. Leighton, Eugene Crum, and Karen Crum.

Rachel Rosa, Holden, ME, pro se.

No other parties filed briefs.

Panel: SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, and JABAR, JJ.

MEAD, J.

[¶ 1] Douglas L. Boothby, who owns a parcel of waterfront property in the Town of Orland, appeals from a judgment of the Superior Court (Hancock County, *Cuddy, J.*) dismissing his five-count complaint against nearby landowners and the Towns of Orland and Penobscot. The complaint asserted claims of trespass and adverse possession, and contained requests to quiet title and for a declaratory judgment finding that the boundary line between Orland and Penobscot was not where the towns believed it to be. Because the court correctly found that it lacked authority to establish municipal boundaries, we affirm its dismissal of the count requesting a declaratory judgment. We vacate the court's dismissal of the remaining counts.

## I. BACKGROUND

[¶ 2] Because the Superior Court dismissed Boothby's complaint as legally insufficient, we accept the following facts alleged in the complaint as true. *See Costain v. Sunbury Primary Care, P.A.*, 2008 ME 142, ¶ 1 n. 1, 954 A.2d 1051, 1052 (stating that a complaint dismissed as legally insufficient is reviewed de novo in light most favorable to plaintiff, accepting material facts alleged as true). Boothby owns property on Toddy Pond in Orland. Defendants Joseph and Barbara Grindle, and Charles and Theresa Gough, also own property on Toddy Pond. All of the parties trace their title to the same original grantor. Each party's deed describes the property conveyed in relation to the Orland/Penobscot boundary line. In 2001, Boothby discovered two unauthorized uses of his land: Grindle had built a cabin or camp on the property, and Gough had created a

clearing and turn-around for a camper, complete with a "power pole and power drop."

[¶ 3]  In 2004, Boothby commissioned Richard Bowden, a Professional Land Surveyor, to survey his land and determine the location of the Orland/Penobscot boundary.  Bowden's survey determined that the true town line was not the line recognized as the boundary by all of the defendants and accepted as correct by the selectmen of both Orland and Penobscot.[1]  In January 2008, Boothby filed his complaint in the Superior Court, naming the Grindles and the Goughs as defendants, and adding twenty additional parties in interest, including the Towns of Orland and Penobscot.  In response, the defendants and some of the parties in interest filed various counterclaims and cross-claims on theories of nuisance, trespass, adverse possession, tortious interference, and slander of title; they also requested that the court quiet title and issue a declaratory judgment in their favor.

[¶ 4]  One of the non-municipal parties in interest moved to dismiss Boothby's complaint pursuant to M.R. Civ. P. 12(b)(6), asserting that the Legislature has the exclusive authority to establish and change the boundaries of towns, and that judicial review is limited to the procedures established in 30–A M.R.S. § 2852 (2008).[2]  The court agreed and dismissed all counts of Boothby's complaint as to all defendants and parties in interest, finding that each of the legal theories advanced in the complaint would require an impermissible judicial determination of the location of the boundary line between Orland and Penobscot.

[¶ 5]  On November 14, 2008, the court granted Boothby's motion for entry of a final judgment pursuant to MR. Civ. P. 54(b)(1), finding "for the reasons stated in the Plaintiff's Motion, that there is no just reason for delay."  The court denied Boothby's motion to dismiss the counterclaims and cross-claims made by the defendants and some of the parties in interest.  This appeal followed.

## II.  DISCUSSION

### A.  Final Judgment

[¶ 6]  Notwithstanding the survival of counterclaims and cross-claims against Boothby, the Superior Court entered a final judgment on its dismissal of Boothby's complaint pursuant to M.R. Civ. P. 54(b)(1), which provides in part:

when more than one claim for relief is presented in an action, whether as a claim, counterclaim, [or] cross-claim ... the court may direct the entry of a final

1.  The complaint acknowledges that the selectmen of both towns accept the accuracy of the existing line, marked by blue blazing, and that the towns have no interest in changing the line.

2.  The statute provides, in part:

When a controversy over a boundary line exists between adjoining municipalities, either may file a complaint with the Superior Court stating the facts and requesting that the line be run.

1.  **Commissioners appointed.**  The court, after due notice to all parties, shall appoint 3 commissioners.

2.  **Ascertain and describe line.**  The commissioners, after giving the interested municipal officers at least 10 days' written notice of the time and place of meeting, shall ascertain the line and describe it by courses and distances.

3.  **Temporary markers.**  The commissioners shall set temporary markers to indicate the established line.

4.  **Report.**  The commissioners shall report their proceedings to the court.

5.  **True line.**  When the court accepts the report, the line established by the commissioners becomes the true line for every municipal purpose, and the court shall order the interested municipalities to replace the temporary markers with monuments as provided in section 2851, subsection 7.

30–A  M.R.S. § 2852 (2008).

judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.

We have cautioned that "[Rule] 54(b)(1) is not a license permitting interlocutory appeal of a judgment on any claim in a case before all claims are resolved by final judgment.... In its certification, the trial court must make specific findings and a reasoned statement explaining the basis for its certification...." *Guidi v. Town of Turner*, 2004 ME 42, ¶¶ 8–9, 845 A.2d 1189, 1192; *see Bates v. Eckhardt Telecomms., Inc.*, 2002 ME 69, ¶ 6, 794 A.2d 648, 650.

■ [¶ 7] Here, the defendants did not object to the entry of a final judgment on the dismissal of Boothby's complaint. The court's order was brief, finding simply that, "for the reasons stated in [Boothby's] Motion ... there is no just reason for delay." We review the court's certification of a partial final judgment for an abuse of discretion. *Chase Home Fin. LLC v. Higgins*, 2008 ME 96, ¶ 9, 953 A.2d 1131, 1133.

■ [¶ 8] In his motion, relied on by the court to supply its rationale for certifying a final judgment, Boothby recited some of the factors a court is required to consider when acting on a request made pursuant to Rule 54(bX1). Those factors are:

The relationship of the adjudicated and unadjudicated claims;

The possibility that the need for review may be mooted by future developments in the trial court;

The chance that the same issues will be presented to [the Law Court] more than once;

The extent to which an immediate appeal might expedite or delay the trial court's work;

The nature of the legal questions presented as close or clear;

The economic effects of both the appeal and any delays on all of the parties, including the parties to [the] appeal and other parties awaiting adjudication of unresolved claims; and

Miscellaneous factors such as solvency considerations, the res judicata or collateral estoppel effect of a final judgment and the like.

*Guidi*, 2004 ME 42, ¶ 12, 845 A.2d at 1193.

[¶ 9] Boothby argued that, because the counterclaims and cross-claims that survived the dismissal of his complaint involved only some of the original parties in interest, any judgment resulting from a trial of those claims would bind only the remaining parties. If he then successfully appealed the dismissal of his complaint, all of the original parties would have to relitigate almost the entire case.

[¶ 10] The Superior Court's acceptance of Boothby's argument was reasonable, based upon its determination that it did not have the authority to determine the location of the boundary line between Orland and Penobscot. If we held on direct appeal that it did and reinstated the complaint, the original parties affected by the location of the boundary, including the two towns, would begin the litigation anew. Accordingly, notwithstanding the sparse language of the trial court's Rule 54(b)(1) order, its certification of a final judgment was an appropriate exercise of discretion, and this appeal from that final judgment is allowable.[3]

---

3. The Court notes with disapproval Boothby's failure to comply with Rule 8 of the Maine Rules of Appellate Procedure, which establishes the minimum requirements for the appendix. In an appeal taken from a Rule 54(b)(1) order, the appendix must include the portions of the record setting out the factual and legal bases for the granting of the order. In this case, not only is the order itself miss-

## B. The Court's Authority to Establish Municipal Boundary Lines

[¶ 11] Count V of Boothby's complaint, seeking a declaratory judgment pursuant to 14 M.R.S. §§ 5951–5963 (2008), is a clear and unequivocal invitation to the Superior Court to establish the Orland/Penobscot boundary line in a location other than that marked by the blue blazed line that both towns accept as the true boundary.[4] Boothby argues that the location of the boundary on the face of the earth, like the location of any property boundary, is a question of fact subject to judicial determination. *See Conary v. Perkins,* 464 A.2d 972, 975 (Me.1983) ("What the boundaries are, as ascertained from the language of a deed, is a question of law; where these boundaries are on the face of the earth is a question of fact.").

[¶ 12] In assessing the legal sufficiency of Boothby's complaint, "we review it de novo in the light most favorable to [Boothby], accepting the material facts it alleges as true, to determine whether [it] could entitle [Boothby] to relief on some theory." *Costain,* 2008 ME 142, ¶ 1 n. 1, 954 A.2d at 1052 (quotation marks omitted). In this case, Boothby's theory of property ownership is founded in large part upon his contention that the current boundary between the towns is erroneous.

[¶ 13] Boothby admits, however, that, as the Attorney General has stated, "[i]t is well-established in this State that the Legislature alone has the authority to alter the boundaries of towns." Op. Me. Att'y Gen. 79–22; *see Inhabitants of Fayette v. Inhabitants of Readfield,* 132 Me. 328, 329, 170 A. 513, 514 (1934). Furthermore, pursuant to the clear process established by the Legislature in 30–A M.R.S. § 2852, the commissioners appointed by the court at the request of a municipality, and not the court itself, determine the location of a municipal boundary line. In that statutory process, "[t]he only power and discretion of the Court ... is to ascertain and determine if the report [of the commissioners] is legally correct in form and if all the proceedings have been in compliance with the statute," or to correct an error "where on the face of the record it is perfectly apparent that the commissioners went beyond the authority given them by the statute." *Inhabitants of Fayette,* 132 Me. at 330, 170 A. at 514 (quotation marks omitted). The statute does not describe any situation in which the court has the power to actually determine the line.

[¶ 14] Accordingly, because the Legislature has the exclusive authority to create and alter municipal boundaries, and has established a specific process by which

---

ing from the appendix, but the reasons supporting the court's decision, incorporated by reference from Boothby's motion, can be ascertained only by locating the motion in the original Superior Court case file. We further note Boothby's failure to comply with the Rule's clearly delineated, and mandatory, sequence for documents in the appendix.

4. Paragraph thirty-two of Boothby's complaint states:

Plaintiff has joined, in addition to the named Defendants, the named Municipal and individual Parties in Interest, since a determination or declaration of the Plaintiffs Property ownership and boundaries necessarily involves a determination of the location of the Orland/Penobscot Town Line. A judgment of this Court as to the location of the Orland/Penobscot Town Line will definitely have an effect upon the Municipal Parties in Interest at least with respect to assessment and collection of municipal real estate taxes, and such location may well have an adverse effect on the individual Parties in Interest since the claimed locations of their respective properties appear to be based on the "blue painted line" referenced in Paragraph 6 of this Complaint and not on the true Orland/Penobscot Town Line as depicted on the aforementioned Bowden Survey. The Plaintiff otherwise has no specific complaint against any of the Parties in Interest.

only municipalities themselves may seek judicial resolution of boundary disputes, and then only through the appointment of commissioners, it is apparent that a court lacks the authority to determine the location of a municipal boundary based on a citizen's complaint. If it were otherwise, any citizen could simply bypass the statutory process created by the Legislature by filing a declaratory judgment action.

[¶ 15] Boothby's argument that he only seeks to have the line physically located and not altered is unavailing. It would make little sense to conclude that the Legislature intended to permit private citizens to litigate the placement of municipal boundaries through an ordinary declaratory judgment action, while restricting the municipalities themselves to the stringent procedural requirements of section 2852. If such private actions were allowed to proceed, towns would potentially be subject over time to a series of lawsuits and resulting judgments changing their boundaries, with all of the collateral consequences that would entail. Because we conclude that the Legislature intended for section 2852 to be the sole means for judicial resolution of boundary disputes between municipalities, Boothby's complaint for declaratory judgment was properly dismissed. *See Morrill v. Me. Tpk. Auth.,* 2009 ME 116, ¶ 5, 983 A.2d 1065, 1067 ("The underlying purpose of statutory interpretation is to give effect to the intent of the Legislature." (quotation marks omitted)).

C. Remaining Counts

[¶ 16] The court's sua sponte dismissal of the remaining counts asserting trespass, adverse possession, and an action to quiet title, was apparently predicated on its assumption that those claims must necessarily fail if the blue blazed line is the presumptive town boundary. Although this may ultimately prove to be the case, it is not possible to determine from the pleadings whether all of the remaining counts possess this inherent fatal flaw. All of the claims could be premised on the allegation that the boundaries of the properties are to be determined by measuring from a line identified in the Bowden Survey as the "town line," because that was the line used by the grantor. Such claims would not require the court to establish where the actual town boundary is. Any judgment issued upon a claim in this context would have no preclusive effect upon any municipality because it adjudicates only the rights of the property owners. Accordingly, it was error for the court to dismiss Counts I through IV upon the four corners of the existing pleadings.

The entry is:

Judgment dismissing Count V affirmed. Judgment dismissing Counts I–IV vacated. Remanded to the Superior Court for further proceedings consistent with this opinion.