MAINE SUPREME JUDICIAL COURT                           Reporter of Decisions
Decision:     2019 ME 77
Docket:       Cum-18-288
Argued:       February 6, 2019
Decided:      May 21, 2019
Revised:      November 19, 2019

Panel:        SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

SYDNEY A. TERMORSHUIZEN et al.

v.

SPURWINK SERVICES, INC.

HUMPHREY, J.

[¶1]   Sydney A. TerMorshuizen and Patricia A. TerMorshuizen appeal from a summary judgment entered by the Superior Court (Cumberland County, *Horton, J.*) in favor of Spurwink Services, Inc. (Spurwink) on the TerMorshuizens' claim for overtime pay pursuant to 26 M.R.S. § 664 (2018).  In this appeal we consider whether interruptions to "sleep time" are compensable under section 664.  The TerMorshuizens contend that the court erred in considering analogous federal law and in concluding that Spurwink's sleep time policy was reasonable as a matter of law.  We affirm the court's judgment.

## I. BACKGROUND

[¶2]   The following facts are drawn from the parties' statements of material facts and their stipulated exhibits.  *See Sullivan v. St. Joseph's Rehab. & Residence,* 2016 ME 107, ¶ 2, 143 A.3d 1283.

[¶3]   Spurwink is a licensed, nonprofit mental health agency that provides treatment, education, and rehabilitation services to individuals with emotional, behavioral, mental, or intellectual disabilities.  The TerMorshuizens were employed by Spurwink and worked as a therapeutic couple at a residential facility in Spurwink's Chelsea program—a day and residential treatment program for children and adolescents with significant emotional and behavioral needs.  They worked in this capacity from September 6, 2011, to December 14, 2016.

[¶4]  As a therapeutic couple, the TerMorshuizens were responsible for "maintaining a home-like, caring, clean and safe environment, contributing to the continuity of programming within the residential setting, and recognizing and implementing the recommendations put forth by the client's . . . treatment plans," and administering prescribed medications.  (Quotation marks omitted.) Throughout their tenure, the TerMorshuizens cared for a total of eight children—seven females and one male, ranging in age from nine to eighteen—

and typically cared for three children at a time. The children had all suffered some type of abuse—physical, sexual, emotional, or some combination thereof—and required near constant supervision during waking hours.

[¶5] Like other therapeutic couples, the TerMorshuizens lived in the residence with the children. They worked a rotating two-week schedule whereby they were in the home for ten consecutive days and eleven consecutive nights and then had four days off. At the start of their employment, the TerMorshuizens were paid for all hours of the ten-day shift except for up to eight hours of sleep time each night and a daily break of three to four hours for eight days of the shift. On July 6, 2012, they signed a new Employee Status Report (ESR) that altered this ten-day shift schedule slightly to provide for seven hours of nightly sleep time and eight daily four-hour breaks.

[¶6] Also included in the ESR was a reference to Spurwink's written policy providing for compensation for sleep time interruptions that call a therapeutic couple to duty to attend to a client.[1] If the interruption prevents

---

[1] Spurwink's sleep time policy appears in two places: a document entitled "THERAPEUTIC COUPLE INTERVIEW TOPICS-CHILDREN'S PROGRAMS" and the TerMorshuizens' ESR. The first document provides,

> There is no pay for sleep time up to (8 hrs/day) except when clients require direct care (SUPERVISOR: Expand upon this topic.)

4

the employee from getting five hours of sleep—not necessarily five consecutive hours—the employee is entitled to be paid for all scheduled sleep time hours. This policy was reflected in the TerMorshuizens' ESR. The TerMorshuizens recorded their work hours on timesheets and were responsible for including on the timesheets any sleep time interruptions that required them to directly care for the children.

[¶7] On May 4, 2017, the TerMorshuizens brought suit against Spurwink for unpaid wages. They alleged that they are entitled to overtime wages, pursuant to 26 M.R.S. §§ 664, 670, for all time worked in excess of forty hours per week. They argued that, while Spurwink paid them for all time recorded on their timesheets, including recorded sleep time interruptions, they are entitled to payment for other client interruptions that prevented them from sleeping, which Spurwink had not allowed them to include on their timesheets.[2]

---

The ESR provides,

> In the event that one is called to duty during the unpaid sleep period, this will be considered paid time (e.g., responding to a client during sleep time). If the periods of interruption are so frequent that one is unable to have five hours for sleep (not necessarily continuous hours), then one will be paid for all scheduled hours.

[2] The TerMorshuizens contend that they suffered sleep deprivation during their eleven-night shifts and were regularly awakened by noises coming from clients' rooms that were amplified by baby monitors and the construction of the home.

[¶8]  On March 23, 2018, Spurwink moved for summary judgment on the grounds that its sleep time compensation policy was in compliance with federal law, specifically 29 C.F.R. § 785.23 (2018), and was reasonable as a matter of law.  On June 26, 2018, the court (Cumberland County, *Horton, J.*) granted Spurwink's motion on each ground.  The TerMorshuizens timely appealed the court's decision.  *See* M.R. App. P. 2B(c).

## II.  DISCUSSION

[¶9]  We review the grant of summary judgment de novo, viewing the evidence "in the light most favorable to the nonprevailing party to determine whether the parties' statements of material facts and the record evidence to which the statements refer demonstrate that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Rainey v. Langen*, 2010 ME 56, ¶ 23, 998 A.2d 342 (quoting *Beal v. Allstate Ins. Co.*, 2010 ME 20, ¶ 11, 989 A.2d 733); *see also Remmes v. Mark Travel Corp.*, 2015 ME 63, ¶ 19, 116 A.3d 466 ("When the material facts are not in dispute, we review de novo the trial court's interpretation and application of the relevant statutes and legal concepts.").

6

A.      Maine Law

[¶10]   The TerMorshuizens first argue that the court erred in applying federal law to determine whether certain interruptions to sleep time constitute compensable work under 26 M.R.S. § 664(3), Maine's overtime provision. They contend that our decision in *Crook v. Russell,* 532 A.2d 1351, 1354-55 (Me. 1987) sufficiently defined "work" for these purposes and that the Superior Court committed an error of law in distinguishing this precedent and turning instead to analogous federal law. We disagree.

[¶11]   Section 664(3) provides, in relevant part:

> An employer may not require an employee to work more than 40 hours in any one week unless 1 1/2 times the regular hourly rate is paid for all hours actually worked in excess of 40 hours in that week.

26 M.R.S. § 664(3). The term "work" is not defined anywhere in section 664 or in title 26 more generally. *See* 26 M.R.S. § 663 (2018). The legislative history of this section is similarly unilluminating. In the absence of a clear statutory definition, we turn first to this state's case law.

[¶12]   The TerMorshuizens urge that, in *Crook*, we already defined what constitutes work for purposes of overtime compensation. While we did consider the term in that case, our narrow focus in *Crook* was whether time spent waiting or "on call" by an emergency medical technician (EMT) was

compensable under section 664. *See* 532 A.2d at 1353-54. We concluded that whether on call time is compensable for purposes of overtime pay turns on whether that time "is primarily for the benefit of the employer or for the benefit of the employee." *See id.* at 1354.

[¶13] The TerMorshuizens, unlike the EMT in *Crook*, however, were not on call or free to spend their waiting time however they wished; they were essentially house parents in a residential facility and were required to remain on site overnight to attend to the needs of the children as those needs arose. Given its factual underpinning and the specificity of its holding, *Crook* provides no guidance here.

[¶14] Moreover, in the case at bar, the parties agreed to a compensation scheme including specific provisions carving out sleep time, generally, as nonwork time with narrow exceptions for time spent actually responding to a client. Given this contractual agreement, and the lack of any guidance from Maine statutory or case law, the Superior Court did not err in turning to federal law. *See Gordon* v. *Me. Cent. R.R.*, 657 A.2d 785, 786 (Me. 1995) ("When, as here, a term is not defined in either the relevant statutory provisions or in prior decisions of this court, Maine Courts may look to analogous federal statutes, regulations, and case law for guidance.").

8

B.      Federal Law

[¶15]  The TerMorshuizens next argue that, even if the Superior Court did not err in looking to federal law generally, it did err in applying 29 C.F.R. § 785.23 specifically.  Again, we disagree.

[¶16]  The Fair Labor Standards Act (FLSA) has an overtime provision similar to section 664(3) that provides:

> Except as otherwise provided in this section, no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C.S. § 207(a)(1) (LEXIS through Pub. L. No. 116-8).  What constitutes work under section 207(a)(1) is defined by regulations promulgated by the U.S. Department of Labor, Wage and Hour Division (WHD),[3] 29 C.F.R. §§ 785.1-.50 (2018), and by federal case law.

[¶17]  "Under certain conditions an employee is considered to be working even though some of his time is spent in sleeping or in certain other activities."  29 C.F.R. § 785.20.  The "certain conditions" may include the

---

[3]  While the Wage and Hour Division's interpretation and guidance is not binding, many courts have adopted its explanations of section 785.23.  *See e.g.*, *Giguere v. Port Res., Inc.*, No. 2:16-cv-58-NT, 2018 U.S. Dist. LEXIS 70913, at *7 n.4 (D. Me. Apr. 27, 2018)

conditions presented in this case, i.e., jobs that require employees to remain at the employer's premises for extended periods of time. However, employers are permitted to carve sleep time out of compensable time when certain conditions are met, *see Giguere v. Port Res., Inc.*, No. 2:16-cv-58-NT, 2018 U.S. Dist. LEXIS 70913, at *8 (D. Me. Apr. 27, 2018); 29 C.F.R. §§ 785.22-.23 (2018). As Spurwink alleges, and the Superior Court found, 29 C.F.R. § 785.23 applies to the circumstances of the TerMorshuizens' employment.[4]

[¶18]  Section 785.23, often referred to as the "homeworker exception," provides, in part:

> An employee who resides on his employer's premises on a permanent basis or for extended periods of time is not considered as working all the time he is on the premises. Ordinarily, he may engage in normal private pursuits and thus have enough time for eating, sleeping, entertaining, and other periods of complete freedom from all duties when he may leave the premises for purposes of his own. It is, of course, difficult to determine the exact hours worked under these circumstances and any reasonable agreement of the parties which takes into consideration all of the pertinent facts will be accepted.

---

[4] Sections 785.22 and 785.23 are both sleep time provisions; however, they distinguish between employees who are on duty for twenty-four hours or more and employees who reside on their employer's premises on a permanent basis or for extended periods of time. 29 C.F.R. §§ 785.22-.23 (2018). While the TerMorshuizens do have twenty-four-hour periods in which they are working, they properly fall under section 785.23 because the daily breaks in their schedules—during which they are free to attend to personal pursuits—interrupt the on duty period for purposes of section 785.22. *See* U.S. Dep't of Labor, Wage & Hour Div., Memorandum 88.48, 1988 WL 614199, at *3 (June 30, 1988); *see also Shannon v. Pleasant Valley Cmty. Living Arrangements, Inc.*, 82 F. Supp. 2d 426, 430 (W.D. Pa. 2000).

29 C.F.R. § 785.23. Further guidance from WHD clarifies that an employee who resides "on the employer's premises 120 hours a week or 5 consecutive days or nights[] would qualify . . . as residing on the premises for extended periods of time within the meaning of section 785.23." *See* U.S. Dep't of Labor, Wage & Hour Div., Memorandum 88.48, 1988 WL 614199, at *1 (June 30, 1988); *see also* U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter (July 27, 2004). WHD's treatment of section 785.23 suggests that this regulation applies to the claims of employees—like the TerMorshuizens—who live and work in residential homes with disabled individuals and are required to remain on the premises overnight. *See* U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter (July 27, 2004); *see also* U.S. Dep't of Labor, Wage & Hour Div., Memorandum 88.48, 1988 WL 614199, at *1 (June 30, 1988). Given this guidance, the Superior Court did not err in applying section 785.23 to determine whether sleep time constitutes compensable work time.

C.     Spurwink's Sleep Time Policy

[¶19]   Finally, the TerMorshuizens argue that, even if section 785.23 applies, the court erred in determining that Spurwink's sleep time policy is reasonable as a matter of law. They further contend that there is a triable issue of fact as to whether Spurwink compensated them for "any interruption" as

they argue is required under the regulation. We review de novo whether Spurwink's sleep time policy was reasonable as a matter of law. *See Rainey*, 2010 ME 56, ¶ 23, 998 A.2d 342. As the party seeking the benefit of section 785.23, Spurwink had the burden to prove that its policy is reasonable. *See Garofolo v. Donald B. Heslep Assocs.*, 405 F.3d 194, 199-200 (4th Cir. 2005).

[¶20] A sleep time policy complies with 29 C.F.R. § 785.23 and is reasonable as a matter of law if

> (1) the employer and the employee have reached agreement in advance that sleep time is being deducted;
>
> (2) adequate sleeping facilities with private quarters . . . were furnished;
>
> (3) if interruptions occurred, employees in fact got at least five hours of sleep during the scheduled sleeping period;
>
> (4) employees are in fact compensated for any interruptions in sleep; and
>
> (5) no more than eight hours of sleep time is deducted for each full 24-hour on-duty period.

U.S. Dep't of Labor, Wage & Hour Div., Memorandum 88.48, 1988 WL 614199, at *3 (June 30, 1988); *see also Giguere,* 2018 U.S. Dist. LEXIS 70913, at *12. Many courts have adopted this framework for determining whether sleep time policies are reasonable. *See Giguere,* 2018 U.S. Dist. LEXIS 70913, at *15 (citing other courts' treatment of this issue).

12

[¶21]  In this case, the parties dispute only whether Spurwink has met its burden of proof with regard to the fourth requirement; specifically, they disagree about the meaning of "any interruptions in sleep."  Spurwink interprets "any interruptions in sleep" to include only interruptions that call an employee to duty to assist a client.  The TerMorshuizens argue, in contrast, that a sleep time policy is reasonable only if it provides compensation for any— meaning all—interruptions to sleep caused by a client, regardless of whether the interruptions actually require direct client interaction.

[¶22]  WHD guidance suggests that a reasonable sleep time policy must compensate employees when sleep time "is interrupted for duty calls."  U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter, at 3 (July 27, 2004); *see also* WHD Field Operations Handbook § 31b12(e)(1); Field Assistance Bulletin No. 2016-1: Exclusions of Sleep Time from Hours Worked by Domestic Service Employees, at 11 (April 25, 2016).  Furthermore, similar FLSA sleep time provisions applicable to other kinds of employees or employment situations also define compensable interruptions as calls to duty.  *See*, *e.g.*, 29 C.F.R. §§ 552.102(a), 785.22(b) (2018) (requiring overtime compensation for live-in domestic service employees and employees who are on duty for 24 hours or more).  Finally, many courts have held sleep time policies reasonable when they

provide compensation for interruptions that specifically call an employee to duty to attend to a client. *See*, *e.g.*, *Giguere,* 2018 U.S. Dist. LEXIS 70913, at *4, 15 (noting additional federal cases in which the employers' policies were found reasonable as a matter of law); *Sidell v. Residential CRF, Inc.*, No. 1:08-cv-1699-SEB-DML, 2010 U.S. Dist. LEXIS 121635, at *4 (S.D. Ind. Nov. 12, 2010); *Hendricks v. Okla. Prod. Ctr. Grp. Homes, Inc.*, 159 Fed. Appx. 875, 876, 878 (10th Cir. 2005)*.*

[¶23]  Spurwink's policy mirrors many of the policies that courts have routinely held to be in compliance with section 785.23.  The language of the policy specifically provides compensation for any call to duty during unpaid sleep time, including "responding to a client during sleep time" and instances "when clients require direct care."  The TerMorshuizens fully understood the limits of Spurwink's sleep time policy at or around the time they were hired and do not argue otherwise here.  The TerMorshuizens signed documentation, as a precondition of their employment, acknowledging the sleep time policy and Spurwink supervisors made it clear to the TerMorshuizens that they would not be compensated for the overnight hours unless they physically got out of bed to provide direct care to the residents.  At no point during their employment was the overnight compensation scheme ambiguous or confusing to the

TerMorshuizens. Contrary to the TerMorshuizens' arguments, Spurwink's policy of compensating employees for sleep time interruptions only when they are called to duty—e.g., when they have to get out of bed to assist a client—complies with 29 C.F.R. § 785.23 and is reasonable as a matter of law.

[¶24] Therefore, because the language of Spurwink's sleep time policy is clear, the TerMorshuizens acknowledged that they had an unambiguous understanding of its provisions as applied to overnight interruptions, and the policy is in compliance with section 785.23, the Superior Court did not err in determining that Spurwink satisfied its burden to demonstrate that its policy is reasonable as a matter of law. *See Rainey,* 2010 ME 56, ¶ 23, 998 A.2d 342. The court properly relied on section 785.23 to define compensable work in the absence of Maine law clarifying the same, and determined without error that the TerMorshuizens were entitled to overtime compensation only for interruptions during sleep time that actually required them to assist a client, for which, the TerMorshuizens concede, they have already been paid.

The entry is:

Judgment affirmed.

Guy D. Loranger, Esq. (orally), and Danielle Quinlan, Esq., Law Office of Guy D. Loranger, Old Orchard Beach, for appellants Sydney A. TerMorshuizen and Patricia A. TerMorshuizen

Graydon G. Stevens, Esq. (orally), Kelly, Remmel & Zimmerman, Portland, for appellee Spurwink Services, Inc.

Cumberland County Superior Court docket number CV-2017-192
FOR CLERK REFERENCE ONLY