STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-2021-294

)
)
GILBERT DOUGLASS, in his capacity as )
co-Personal Representative of the Estate of )
Marilyn O'Brien,                          )
                                          )
                Plaintiff,                )
                                          )          ORDER ON DEFENDANT'S MOTION
        v.                                )          FOR SUMMARY JUDGMENT
                                          )
LISA SELLICK and ALPHA ONE,               )
                                          )
                Defendants.               )

Before the Court is Defendant Alpha One's Motion for Summary Judgment as to all counts

of Plaintiff Gilbert Douglass' Complaint. For the reasons set forth herein, the Motion is

GRANTED.

**FACTUAL BACKGROUND**

This case arises out of a theft. Defendant Lisa Sellick ("Sellick") misappropriated funds

belonging to the decedent, Marilyn O'Brien ("Marilyn"), while working as a caregiver for

Marilyn's daughter, Holly O'Brien ("Holly").[1] Plaintiff Gilbert Douglass ("Douglass") brings this

suit on behalf of Marilyn's Estate, as co-Personal Representative thereof, to recover money

damages from Sellick and from Alpha One, whom Douglass claims is vicariously liable.

Alpha One is a Maine non-profit. (Plaintiff's Complaint ("Compl.") ¶ 3.) The decedent,

Marilyn, was a resident of East Baldwin until her death in 2020. (Compl. ¶ 4.) Marilyn's daughter,

Holly, has a disability that, under Section 19, qualifies her for in-home care paid for by MaineCare.

---

[1] Sellick pleaded guilty to one count of Theft by Unauthorized Taking or Transfer, 17A § 353(1)(B)(4) in 2021. *State v. Sellick*, No. CUMCD-CR-2020-01215 Unified Criminal Docket (Cumberland Cnty., Dec. 3, 2021).

REC'D CUMB CLERKS OFC

1

(Defendant's Motion for Summary Judgment ("Def. MSJ") 2.) MaineCare provides, among other options, a "Participant-Directed Option" for in-home services, which allows people with disabilities to hire, train, schedule, and supervise their own caregiver ("Attendant"). (Def. MSJ 5.) Alpha One is a Service Coordination Agency for that program. (Def. MSJ 4.)[2]

In December 2018, through the Participant-Directed Option, Sellick became Holly's Attendant. (Plaintiff's Response to Def. MSJ ("Pl. Resp.") 2.) The following December, Holly learned that Sellick had been spending money from Marilyn's account and intercepting the bank statements. (Pl. Resp. 3.) Sellick used the money to purchase food, gas, and items from the dollar store. (Pl. Resp. 4.) In all, Sellick misappropriated $42,386 and caused $896 in overdraft charges on the account. (Pl. Resp. 4.)

Douglass filed the instant complaint in Cumberland County Superior Court on August 2, 2021, seeking judgment against Sellick and Alpha One for conversion, negligence, breach of fiduciary duties, and negligent supervision. Alpha One's Motion for Summary Judgment was docketed on August 8, 2022. Douglass' opposition was docketed on August 17, 2022. Alpha One filed its reply on September 9, 2022.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper when review of the parties' statements of material fact and the record evidence to which they refer, considered in the light most favorable to the nonmoving party, indicates that there is no genuine issue of material fact in dispute and the moving party is entitled to judgment as a matter of law. M.R. Civ. P. 56(c); *Remmes v. The Mark Travel Corp.*, 2015 ME 63, ¶ 18, 116 A.3d 466. A fact is material if it has the capacity to affect the outcome of

---

[2] For context, Service Coordination Agencies are "responsible for administrative functions, including but not limited to, maintaining Member records, submitting claims, conducting internal utilization and quality assurance activities, and meeting the reporting requirements of the Department." 10-144 C.M.R. ch. 101, §§ 12.02-19; 19.01-30.

the case. *Lewis v. Concord General Mut. Ins. Co.*, 2014 ME 34, ¶ 10, 87 A.3d 732. An issue is genuine if the factfinder must choose between competing versions of the truth. *Id.* Summary judgment may be used to "isolate a question of law which will be dispositive of the case." *Magno v. Freeport*, 486 A.2d 137, 141 (Me. 1985).

## DISCUSSION

### Vicarious Liability

An employer may be held vicariously liable "for a tort committed by its employee acting within the scope of employment." *Picher v. Roman Catholic Bishop of Portland*, 2009 ME 67, ¶ 32, 974 A.2d 286 (quoting Restatement (Third) of Agency § 7.07 (Am. L. Inst. 2006)). "[A] prerequisite to imposing vicarious liability is the existence of an employer-employee relationship." *Rainey v. Langen*, 2010 ME 56, ¶ 14, 998 A.2d 342. Whether an employer-employee relationship exists is generally a question of fact. *Cnty. Forest Prods. v. Green Mountain Agency, Inc.*, 2000 ME 161, ¶ 21, 758 A.2d 59. The right to control, which includes "the rights both to employ and to discharge subordinates and the power to control and direct the details of the work," is the most important factor in determining whether an employer-employee relationship exists. *Rainey*, 2010 ME 56, ¶ 15, 998 A.2d 342 (quoting *Legassie v. Bangor Publ'g Co.*, 1999 ME 180, ¶ 5, 741 A.2d 442).

The undisputed material facts demonstrate that Alpha One and Sellick did not have an employer-employee relationship. Rather, Holly and Sellick had an employer-employee relationship. A MaineCare member who chooses to participate in the Participant-Directed Option for Attendant Services, like Holly, "is considered the employer of his or her Attendant(s)." 10-144 C.M.R. ch. 101, § 19.01-24. Under that program, "the member hires, discharges, trains, schedules and supervises the Attendant(s) providing services." *Id.* Holly signed a Service Agreement and a

3

Fiscal Intermediary Agreement, both of which provided that, as the consumer, she agreed to be "solely responsible for hiring, training, certifying competency, supervising, and firing" her Attendant. She also signed other documents that listed her as Sellick's employer, including a Personal Attendant Relationship Form and Sellick's I-9 Form. Clearly, Holly had the right to control Sellick's work.

Douglass concedes that Holly signed the above listed documents[3] and that Alpha One had no contract with Sellick and was not responsible for her compensation. He seeks to impute liability to Alpha One on the grounds that Alpha One was involved to some extent in hiring Sellick and approving of Holly's employment of Sellick. Genuine issues remain in dispute as to how involved Alpha One actually was in the hiring process, but none are material. Even if all issues were resolved in Douglass' favor, the facts would not support a finding that Alpha One was Sellick's employer. The undisputed facts show that Alpha One had no right to control Sellick in the performance of her work—only Holly had that right. Alpha One's limited role in carrying out the administrative functions necessary to facilitate employer-employee relationships between members and their Attendants does not create employer-employee relationships between Alpha One and Attendants.

The lack of an employment relationship between Alpha One and Sellick is dispositive of the vicarious liability claim. Thus, the Court need not reach a conclusion as to whether Sellick's intentional theft fell outside the scope of her employment.

**Negligent Supervision**

---

[3] To the extent that Douglass argues, citing to his own affidavit, that Holly medically lacked the capacity to effectively supervise Sellick as required by the contracts, or that Holly understood Alpha One's role to be more than that of a facilitator, Douglass has not shown that he is competent to testify to those facts, nor has he shown that they would be admissible in evidence. As such, the statements are not compliant with Rule 56 and do not generate a genuine issue of material fact. M.R. Civ. P. 56(e).

Dispositive of Douglass' negligent supervision claim is whether a "special relationship" existed between Marilyn and Alpha One. The Law Court first recognized the tort of negligent supervision in *Fortin v. Roman Catholic Bishop of Portland.* 2005 ME 57, ¶ 39, 871 A.2d 1208. "The tort of negligent supervision first requires that the defendant owe a duty of supervision to the plaintiff. That duty arises from a special relationship, such as a custodial relationship, between the parties." *Bell v. Dawson*, 2013 ME 108, ¶ 19, 82 A.3d 827. The existence of a duty is a question of law which the court may resolve at summary judgment. *Mastriano v. Blyer*, 2001 ME 134, ¶ 11, 779 A.2d 951.

Douglass claims that a special relationship existed here because Marilyn relied on Alpha One to take care of her daughter, Holly. The record does not support that argument. Instead, the record is clear that Holly agreed in writing to be solely responsible for supervising Sellick. Alpha One did not employ or supervise Sellick, nor did it have any relationship with Marilyn. Alpha One was not responsible for Holly's care; it was merely the Service Coordination Agency tasked with facilitating Holly's use of MaineCare's Participant-Directed Option for in-home disability services. Thus, as a matter of law, Alpha One had no duty of supervision.

## CONCLUSION

The record reflects that Holly, not Alpha One, was Sellick's employer and supervisor. Therefore, Alpha One cannot be held vicariously liable for Sellick's actions, nor can it be found negligent in supervising her. No genuine issues of material fact remain in dispute, and Alpha One is entitled to judgment as a matter of law.

**Entry is:**

Defendant Alpha One's Motion for Summary Judgment is Granted as to all counts. The clerk is directed to incorporate this order into the docket by reference pursuant to M.R. Civ. P. 79(a).

Dated: 11/21/22

John O'Neil Jr.
Justice, Maine Superior Court

Entered on the Docket: 11/22/2022

6